UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:24-cr-184 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| REGINALD MCCURDY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the government presented this matter to a federal grand jury, investigators sought and obtained three parcel search warrants and authorization to intercept communications pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  Defendant Reginald McCurdy ("McCurdy") moved to suppress the evidence obtained pursuant to and derived from these warrants.  (Doc. 85.)  The government opposed the motion (Doc. 96), McCurdy replied (Doc. 101), and the government filed a surreply (Doc. 111).  For the reasons stated herein, the Motion to Suppress is DENIED in its entirety.

## I.     BACKGROUND

On May 30, 2024, a federal grand jury returned an Indictment charging McCurdy with Conspiracy to Distribute and Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); Distribution and Attempted Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846; Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2;

Use of Communications Facility to Facilitate Felony Drug Offenses in violation of 21 U.S.C. § 843(b); and Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. § 1952(a)(3). (Doc. 1.)  The charges originated from a lengthy, multi-state investigation of McCurdy, his co-defendants King Stevenson, Angelina Ventura, Katrina Sterling, and Cherrell Green, and others. (*Id.*)

On November 10, 2019, a postal inspector with the United States Postal Inspection Service identified two suspicious parcels.  The first parcel was sent via USPS Priority Mail and identified as "parcel no. 9505 5110 2608 9313 3422 07 addressed to Mrs. Williams, 290 E. 255th, Euclid, Ohio 44132, and having a return address of Marcus Taylor, 12350 [no street listed], Litchfield Park [no state listed] 85340" (hereinafter "Parcel 1").  The second parcel, also sent via USPS Priority Mail, was identified as "parcel no. 9505 5118 0512 9313 2810 96 addressed to Michael Thomas, 2310 Hood Ave, Cleveland, Ohio 44109, and having a return address of Ashley Moore, 4441 W Bethany Home, Glendale [no state listed] 85301 (hereinafter "Parcel 2").

On November 12, 2019, inspectors sought and obtained search warrants for both parcels. The affidavit in support of probable cause for Parcel 1 stated:

- Parcel 1 was identified "as a suspected drug parcel based on a number of characteristics, including but not limited to the class of mail, origin, destination, and size."  (Doc. 96-1 at 593.)

- The return address on Parcel 1 was not associated with anyone named Marcus Taylor. (*Id.* at 594.)

- Inspectors conducted a lineup with a narcotic detection canine.  Detective Mike Twombly and the narcotic detection canine "Ciga" conducted a lineup with several blank parcels and Parcel 1.  Ciga alerted on Parcel 1 but none of the other parcels.  (*Id.*)

- Detective Twombly and Ciga were both certified in October 2018 by the Ohio Peace Officers Training Academy and the North American Police Working Dog Association. (*Id.*)  Ciga was trained and certified to alert to the presence of the odors from marijuana,

cocaine, heroin, MDEA (methylendioxyethylamphetamine), methamphetamine, and/or derivatives.  (*Id.*)

The affidavit in support of probable cause for Parcel 2 stated:

- Parcel 2 was identified "as a suspected drug parcel based on a number of characteristics, including but not limited to the class of mail, origin, destination, and size."  (Doc. 96-2 at 598.)

- The delivery address on Parcel 2 was not associated with anyone named Michael Thomas.  (*Id.*)  The return address on Parcel 2 was not associated with anyone named Ashley Moore.  (*Id.* at 599.)

- Inspectors conducted a lineup with a narcotic detection canine.  Detective Mike Twombly and the narcotic detection canine "Ciga" conducted a lineup with several blank parcels and Parcel 2.  Ciga alerted on Parcel 2 but none of the other parcels.  (*Id.*)

- Detective Twombly and Ciga were both certified in October 2018 by the Ohio Peace Officers Training Academy and the North American Police Working Dog Association.  (*Id.*)  Ciga was trained and certified to alert to the presence of the odors from marijuana, cocaine, heroin, MDEA (methylendioxyethylamphetamine), methamphetamine, and/or derivatives.  (*Id.*)

The inspectors' search of Parcel 1 revealed a glass jar with blue tablets marked as "30mg oxycodone."  (Doc. 96-1 at 591.)  The search of Parcel 2 also revealed blue tablets marked as "30mg oxycodone."  (Doc. 96-2 at 596.)

On January 10, 2022, postal inspectors identified a third suspicious parcel.  This parcel was identified as parcel "no. 9505 5125 8820 2006 8566 41, addressed to, Ms. Venture, 4257 Beverly Hill Dr., Brunswick, OH 44212 bearing a return address of, Ms. Gleen, 1700 N. 103rd Ave., Avondale, AZ 85392 (hereinafter "Parcel 3").  As with Parcels 1 and 2, inspectors sought a search warrant and attested to the following:

- Parcel 3 was identified "as a suspected drug parcel based on several factors including but not limited to origin, method of mailing, and size."  (Doc. 96-3 at 601.)

- The delivery address on Parcel 3 was not associated with anyone named "Ms. Venture." (*Id.*)  The return address on Parcel 3 was not associated with anyone named "Ms. Gleen."  (*Id.* at 602.)

- Inspectors conducted a lineup with a narcotic detection canine.  Detective Mike Twombly and the narcotic detection canine "Ciga" conducted a lineup with several blank parcels and Parcel 3.  Ciga alerted on Parcel 3 but none of the other parcels.  (*Id.*)

- Detective Twombly and Ciga were certified in October 2021 by the Ohio Peace Officers Training Academy and in November 2021 by the North American Police Working Dog Association.  (*Id.*)  Ciga was trained and certified to alert to the presence of the odors from marijuana, cocaine, heroin, MDEA (methylendioxyethylamphetamine), methamphetamine, and/or derivatives.  (*Id.*)

As it relates to Parcel 3, the case caption for the warrant application contained the correct delivery and return address information, as well as the tracking number.  (*Id.* at 600.)  The same information appeared in the body of the application.  (*Id.*)  Throughout the supporting affidavit, Parcel 3 was similarly identified.  (*Id.* at 601-03.)  In the warrant, the caption properly identified Parcel 3.  (*Id.* at 604.)  However, in the "property to be searched" section, the parcel was identified as follows:

> U.S. Postal Service Priority Mail Express parcel bearing label no. EJ682478445US addressed to Caesar Morera, 9903 Santa Monica Blvd. P.O. Box 310, Beverly hills, Ca 90212 United States, with a return address of Mike Black, 547 Beacon, Akron Oh 44311 United States.

(*Id.*)  Magistrate Judge Jonathan D. Greenberg authorized the search warrant.  (*Id.*)  The search revealed "205 grams of blue M 30 fentanyl pills."  (*Id.* at 605.)

After utilizing various options to investigate the purported drug conspiracy and identify possible participants, law enforcement officers requested an order authorizing a wiretap pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  (Doc. 96-6.)  The affidavit in support of the application identified the target telephone (McCurdy's phone), interceptees, and subjects, and it detailed the facts and circumstances supporting probable cause, including why a wiretap was necessary to further the investigation.  (Doc. 96-5.)

On May 4, 2024, the wiretap application and affidavit were duly sworn, and United States District Judge Christopher A. Boyko authorized the interception of communications on McCurdy's phone.  (Doc. 96-4 at 617; Doc. 96-5 at 698; 96-6 at 711.)

## II.   ANALYSIS

The Fourth Amendment mandates that search warrants be supported by probable cause. U.S. CONST. amend. IV.  Probable cause exists if there is "a fair probability that evidence of a crime will be located on the premises of the proposed search."  *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). Probable cause "is not a high bar."  *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014).

When determining whether a search warrant is supported by probable cause, review is limited to the "four corners of the affidavit."  *United States v. Lewis*, 81 F.4th 640, 646 (6th Cir. 2023).  "Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny."  *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010).  A magistrate judge's probable cause findings are afforded great deference.  *See United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).  A district court reviewing a magistrate judge's determination of probable cause simply ensures the magistrate judge had a substantial basis for concluding that probable cause supported the warrant.  *Id.* at 307; *see also United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 92-93 (6th Cir. 1985)); *see also United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (citation omitted) (regarding probable cause determinations, "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised.").

A.      The Parcels

McCurdy asserts the search and seizure of the three parcels violated his Fourth Amendment right.  (Doc. 85 at 420.)  To him, Ciga's positive alerts failed to support probable cause because Ciga was "only trained in detecting and certified for detecting marijuana, cocaine, heroin, MDEA (methylenedioxymethamphetamine), methamphetamine ("crystal meth"), and/or their derivatives," and not fentanyl.  (*Id.* at 424.)  Invoking *Florida v. Harris*, 568 U.S. 237, 245, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013), McCurdy seeks a hearing to challenge Ciga's purported unreliability through cross-examination.  (*Id.* at 425.)  McCurdy also asserts the search warrant for Parcel 3 was defective because the description of the "property to be searched" in the warrant did not match the parcel description listed in the warrant caption, application caption, and affidavit in support of probable cause.  (*Id.* at 426-27.)

In opposition, the government highlights McCurdy's failure to assert a legitimate expectation of privacy in the parcels.  (Doc. 96 at 553.)  As to the canine alerts, the government directs the Court to cases in which Ciga's alerts have been found to support probable cause.  (*Id.* at 557-59.)  And, while admitting the "property to be searched" section of the warrant states an incorrect description of the parcel, the government submits all other pertinent parts of the required documents correctly identify Parcel 3.  As such, and consistent with *United States v. Abdalla*, 972 F.3d 838 (6th Cir. 2020), the clerical error is not fatal.  (*Id.* at 572.)

McCurdy's reply does not make any statement concerning an expectation of privacy in the parcels.  Instead, the reply reasserts his challenges to the wiretap and provides more detailed information as to his request for a *Franks* hearing.  (Doc. 101.)

### 1.     Fourth Amendment Privacy Interest

To properly present a Fourth Amendment challenge to the parcel search warrants, McCurdy must first demonstrate a legitimate expectation of privacy.  *United States v. Rogers*, 97 F.4th 1038, 1042 (6th Cir. 2024); *see also United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001) (citing *Rakas v. Illinois*, 439 U.S. 128, 144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).  "To establish such an expectation, the defendant must show [A] that he had a subjective expectation of privacy [in the place to be searched and item to be seized], and [B] that his expectation was objectively reasonable."  *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009).  "An expectation is objectively reasonable only when it is one that 'society is prepared to recognize as legitimate.'"  *Id.* at 283 (quoting *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)).

It is McCurdy's burden to establish his actual expectation of privacy *and* the objective reasonableness of his expectation of privacy.  *Rogers*, 97 F.4th at 1042.  McCurdy has not asserted any expectation of privacy in the searched parcels, and the mailing information would cut against any such assertion.  Parcel 1 was sent by M. Taylor from Litchfield Park (no state listed) 85340 to Mrs. Williams in Euclid, Ohio 44132; Parcel 2 was sent by A. Moore from Glendale (no state listed) 85301 to M. Thomas in Cleveland, Ohio 44109; and Parcel 3 was sent by Ms. Glenn from an address in Arizona (no city listed) 85392 to Ms. Venture in Brunswick, Ohio.

A defendant who neither sends nor is the listed recipient of a parcel generally does not have a subjective expectation of privacy in its contents.  *United States v. Ligon*, 861 F. App'x 612, 620 (6th Cir. 2021) (defendant had no subjective expectation of privacy in the packages because "he did not send them and they were not addressed to him personally"); *see also United States v. James*, No. 19-2057, 2020 WL 13598804, 2020 U.S. App. LEXIS 22766, at *9 (6th Cir.

July 21, 2020) (defendant did not have a legitimate expectation of privacy in package addressed to another).  On the face of the parcels, someone other than McCurdy sent them and someone other than McCurdy was to receive them.  Without more, the facts do not present a reasonable expectation of privacy in the parcels sufficient to bring the Fourth Amendment challenge McCurdy now asserts.

### 2.     Probable Cause

Even if McCurdy could demonstrate a legitimate expectation of privacy in the parcels, his assertion the search warrants are unsupported by probable cause is without merit.

#### a.     Narcotics Detection Dog

The government identifies four points establishing probable cause for the parcel search warrants: (1) the return address and the delivery address did not associate with their respective names, indicating that those were fictitious names; (2) the parcels had been sent from Arizona, which is a common source area for drugs mailed into Ohio; (3) the parcel's size, weight, and mailing method matched the profile of a drug parcel; and (4) a certified drug dog properly trained and accredited alerted to the presence of narcotics inside the parcel.  (Doc. 96 at 558.) Defendant's probable cause challenge is limited to only the narcotics detection dog.  (Doc. 85 at 424.)  To McCurdy, Ciga's lack of training to detect fentanyl means he is unreliable and, as a result, his positive alerts in this case did not support probable cause.  (*Id.* at 425.)  Short of this finding, McCurdy seeks an evidentiary hearing consistent with *Harris*.  (*Id.*)

"If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."  *Harris*, 568 U.S. at 246-47.  In this case, each search warrant was supported by an affidavit stating Detective Twombly and Ciga were certified in

October 2018 by the Ohio Peace Officers Training Academy and by the North American Police Working Dog Association. (Doc. 96-1 at 594; Doc. 96-2 at 599; Doc. 96-3 at 602.) They were certified again in October and November 2021, respectively. McCurdy makes no challenge to these stated qualifications.

While McCurdy makes much of the fact Ciga's training did not specifically include fentanyl detection, a reviewing court's assessment of probable cause in support of a search warrant does not and should not include reviewing the search warrant inventory or subsequently obtained lab reports. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) ("When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit[.]"). Probable cause means simply this: based on the information provided in each affidavit, was it probable that evidence of illegal narcotics would be found in the searched parcels? The answer is yes.

A properly trained dog's positive alerts are sufficient to support probable cause. *See Ligon*, 861 F. App'x at 620-21 ("Because [the defendant] did not contest that Ciga was certified by a bona fide organization, the district court did not err by presuming that the canine's alert provided probable cause to search without holding an evidentiary hearing"); *United States v Robinson*, No. 18-cr-168, 2020 WL 3962130, 2020 U.S. Dist. LEXIS 122441, at *6-7 (N.D. Ohio July 13, 2020) ("A reviewing court should not conclude a search lacked probable cause simply because the search does not uncover a substance which the dog is trained to detect"). The affidavits included statements regarding Ciga's training and certifications. Ciga positively alerted to each of the parcels. Ciga's positive alerts, among other facts, were presented to the magistrate judges to establish probable cause for the parcel search warrants. Thus, all three

parcel search warrants were supported by probable cause, and McCurdy has not established an evidentiary hearing pursuant to *Harris* is warranted.[1]

### b.    Incorrect Address on Warrant for Parcel 3

McCurdy challenges the search of Parcel 3 because, to him, the warrant fails to particularly describe the place to be searched.  (Doc. 85 at 426.)  He argues the search warrant authorized search of a "completely unique and unmistakably identified, different parcel" than the parcel identified in the supporting affidavit.  (*Id.* at 427.)  For its part, the government concedes the error, but argues it was only "clerical" and not fatal to the finding of probable cause.  (Doc. 96 at 567.)

The search warrant packet presented to Magistrate Judge Jonathan D. Greenberg contained three documents: (1) an application for a search warrant; (2) the affidavit in support of the application for a search warrant; and (3) the search warrant itself.  (Doc. 96-3.)  The application for a search warrant and the affidavit in support specifically identified Parcel 3 as "parcel bearing tracking no. 9505 5125 8820 2006 8566 41 addressed to, Ms. Venture, 4257 Beverly Hill Dr., Brunswick, OH 44212 with a return address of, Ms. Gleen, 1700 N. 103rd Ave., Avondale, AZ 85392."  (*Id.* at 600-01.)  Similarly, the search warrant identified the same parcel to be searched in the case caption (and again in the inventory page following the execution of the search warrant).  (*Id.* at 604-05.)  But the search warrant text identified a different parcel as the property to be searched: "parcel bearing label no. EJ682478445US addressed to Caesar

---

[1] As other courts have explained, *Harris* does not allow defendants to sidestep the *Franks* requirements.  *See Robinson*, 2020 WL 3962130, 202 U.S. Dist. LEXIS 122441, at *5 (citing *United States v. Cruz*, 715 F. App'x 454, 456 (6th Cir. 2017)).  McCurdy must still make a "substantial showing" that the parcel search warrants were issued because of a false or misleading statement.  Here, McCurdy makes no assertion that the affidavit's description of Ciga's training and positive alerts were either false or misleading.

Morera, 9903 Santa Monica Blvd. P.O. Box 310, Beverly hills Ca 90212 United States, with a return address of Mike Black, 547 Beacon, Akron Oh 44311 United States."  (*Id.* at 604.)

"To decide whether a warrant drafting mistake violates the Fourth Amendment, we ask whether 'the inaccuracies in the warrant [would] lead to a mistaken search of other premises.'" *United States v. Abdalla*, 972 F.3d 838, 845 (6th Cir. 2020) (quoting *United States v. Durk*, 149 F.3d 464, 465-66 (6th Cir. 1998)).  A clerical error will not be fatal to a search warrant if the warrant describes the thing to be searched specifically enough to (A) "enable the executing officer to locate and identify the [item] with reasonable effort" and (B) "prevent the government from mistakenly searching a different [item]."  *Id.*  Crucially, "listing the wrong address does not automatically invalidate a search warrant."  *Id.* (quotation and citation omitted).

After reviewing all papers presented to Magistrate Judge Greenberg, it is clear to this Court that the parcel description in the warrant's text was a clerical error.  In every other instance, including the captions and the affidavit, Parcel 3 was correctly identified.  Thus, a sufficient description was provided such that the parcel could be properly identified and a mistaken search preventable.  Consistent with *Abdalla*, this clerical error does not invalidate the warrant.  The search conducted pursuant to the search warrant for Parcel 3 was lawful.

### B.     Title III Wiretap

If a wiretap application is granted, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, allows an aggrieved person to move to suppress the contents of intercepted oral or wire communications, or evidence derived from such communications, if such contents or evidence were obtained in violation of the statute. An aggrieved person may challenge the use of such evidence at trial on any of the following:

(i)     the communication was unlawfully intercepted;

(ii)     the order of authorization or approval under which it was intercepted is
         insufficient on its face; or
(iii)    the interception was not made in conformity with the order of authorization or
         approval.

18 U.S.C. § 2518(10)(a).

"Both probable cause and necessity are requirements without which an interception is
unlawful." *United States v. Johnson*, No. 23-cr-142, 2025 WL 223774, 2025 U.S. Dist. LEXIS
8625, at * 9-10 (M.D. Tenn. Jan. 16, 2025); *see also* 18 U.S.C. § 2518(3)(a)-(d).

Probable cause determinations in the wiretap order context do not mandate certainty, "but
rather a fair probability and something more than mere suspicion." *United States v. Poulsen*, 655
F.3d 492, 504 (6th Cir. 2011) (citing *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988),
*cert. denied*, 488 U.S. 821 (1988)).  "A succession of superficially innocent events can be
sufficient for probable cause if 'a prudent man could say to himself that an innocent course of
conduct was substantially less likely than a criminal one.'"  *Id*. (quoting *Alfano*, 838 F.2d at 162-
63).

To satisfy the necessity requirement, the application must include "a 'full and complete
statement as to whether or not other investigative procedures have been tried and failed or why
they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'"  *United States
v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002) (quoting 18 U.S.C. § 2518(1)(c)).  The purpose of
this requirement is "to ensure that a wiretap 'is not resorted to in situations where traditional
investigative techniques would suffice to expose the crime,'" *Alfano*, 838 F.2d at 163 (quoting
*United States v. Kahn*, 415 U.S. 143, 153 n.12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974)), and to
"protect[] against the impermissible use of a wiretap as the 'initial step in [a] criminal
investigation,'" *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (quoting *United States v.
Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)).

In establishing necessity, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163.  The "mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *Stewart*, 306 F.3d at 305.  Instead, "'all that is required is that the investigators gave serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigator's belief that such non-wiretap techniques have been or will likely be inadequate.'" *Alfano*, 838 F.2d at 163-64 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)).

As the one seeking to suppress evidence, McCurdy bears the burdens of production and persuasion.  *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).  Orders authorizing the use of wiretaps are presumed valid, and the reviewing court must give "great deference to the determinations of the issuing judge." *Rice*, 478 F.3d 709 (citing *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000)).  "[T]his deference does not logically apply where the issuing judge is given misleading information in the wiretap application or supporting affidavits." *Id.*

McCurdy challenges the wiretap's inclusion of the parcel search warrants, asserts the Affiant made several misleading or false statements in support of necessity, and contests necessity in general.  (Doc. 85 at 428.)  To McCurdy, necessity was not established and the wiretap was unlawful.  (*Id.*)  The government's opposition focuses on McCurdy's failure to meet the requirements for a *Franks* hearing and the Affidavit's thorough discussion of necessity.  (Doc. 96 at 576-79.)

### 1.     Parcel Search Warrants

As explained above, McCurdy did not establish an expectation of privacy in any of the three parcels and, even if he did, each parcel search warrant was supported by probable cause. This information was properly included in the affidavit.

### 2.     Misleading or False Statements

District courts may hold an evidentiary hearing to address challenges to the validity of a search warrant affidavit provided the defendant (A) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and, if such a preliminary showing is made, (B) the false statement or material omission was necessary to establish probable cause.  *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)); *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997).  Such an evidentiary hearing is commonly called a *Franks* hearing.

The defendant's burden in making the substantial preliminary showing of a knowing falsehood in a search warrant is a heavy one.  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  This is because search warrant affidavits are presumed valid.  *Franks*, 438 U.S. at 171.  "The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  *Id.* at 154.  "There must be allegations of deliberate falsehood or reckless disregard for the truth, those allegations must be accompanied by an offer of proof" and affidavits or sworn or otherwise reliable statements of witnesses should be furnished, "or their absence satisfactorily explained."  *Id.* at 171.

When the affiant's statements are alleged to be reckless, the defendant must show "the affiant subjectively entertained serious doubts as to the truth of his allegations."  *Bateman*, 945

F.3d at 1108 (quotations omitted). Allegations of negligence or mistake are insufficient to merit a *Franks* hearing. *Franks*, 438 U.S. at 171. The decision on whether to hold a *Franks* hearing "is committed to the sound discretion of the district court." *Bateman*, 945 F.3d at 1008.

### a. IP Session Data

McCurdy highlights two paragraphs related to IP session data that he believes are inconsistent and therefore misleading. (Doc. 85 at 429.)

Paragraph 63 states:

> Investigators obtained the IP address data relating to the devices used to view the parcel tracking for parcel-6641 through the USPS. After reviewing the IP addresses used to access the tracking for parcel-6641, it was learned that on January 10, 2022, at approximately 9:50 a.m. eastern time, a device assigned IP address 2600:8800:5105:3c00:5d31:8d2e:2f57:83e6 . . . queried the tracking details for the parcel-6641. Investigators utilized publicly available IP address geolocation databases and found that IP address 83e6 geolocates to Arizona and is being used by the Internet Service Provider (ISP) Cox Communications. A subpoena was sent to Cox Communications and upon return of the data it was found that IP address 83e6, that was used to check the tracking of parcel-6641 sent to 4257 Beverly Hills Drive, Brunswick, Ohio, was used by a devise on the internet that's subscribed to by REGINALD MCCURDY. The subscriber information for that account shows an address of 10726 W Wagon Wheel Drive, Glendale, Arizona.

Paragraph 108 states, in pertinent part:

> Affiant is unsure as to whom ANGELINA VENTURA is re-distributing the pills to, so we are unable to proactively cultivate any CS's at this time. Multiple surveillance attempts have not proven fruitful to identify who associates of ANGELINA VENTURA and/or REGINALD MCCURDY are. It is also not possible at this time to know if there are other addresses that REGINALD MCCURDY is suing to distribute pills to the Northern District of Ohio as drug trafficking organizations often change the locations that are receiving drug shipments to avoid suspicion. The IP Session data obtained from the pen/trap and trace order on TT-1 has proven useful to identify that REGINALD MCCURDY is utilizing another telephone number associated to his WhatsApp, due to TT-1 connecting to an external IP Address for WhatsApp chat and investigators confirming that both known telephone numbers for REGINALD MCCURDY not being associated with a WhatsApp account. The IP Session data was unable to show any visits to the USPS website for tracking. However, it is not completely

known whether or not the IP Session data will show in plain English to be able to be resolved utilizing the destination IP address.

"An IP address is issued by an internet service provider and is a number assigned to a specific transmission line such as a telephone or cable through which a computer accesses the internet." *United States v. Meeks*, 290 F. App'x 896, 897 n.2 (6th Cir. 2008).  Paragraph 63 described reviewing the USPS website to identify the IP address that tracked Parcel 3.  Armed with that IP address, investigators determined the identified IP address was in Arizona and registered to Cox Communications.  A subpoena to Cox Communications confirmed that <u>a</u> <u>device</u> used the identified IP address to track Parcel 3.  That IP address was subscribed to by McCurdy.

In Paragraph 64, the Affiant explained how toll records revealed McCurdy placed an outbound call to Ventura shortly after the USPS website was used to track Parcel 3.  The Affiant concluded the USPS website was accessed by McCurdy, or someone else on his behalf, and McCurdy and Ventura coordinated the delivery of Parcel 3.  (Doc. 85-5 at ¶ 64.)

Paragraph 108 explained that IP session data <u>on TT-1</u> was useful to identify McCurdy's use of another phone to access WhatsApp.  The Affiant then affirmatively disclosed the IP session data on TT-1 did not "show any visits to the USPS website for tracking."

Paragraphs 63 and 108 are neither inconsistent nor misleading.  McCurdy confuses two separate IP session data queries—one for McCurdy's internet provider and the other for his phone (TT-1).  By including the statement that TT-1 did not appear to have accessed the USPS website to track parcels, the Affiant disclosed possible exculpatory information.  18 U.S.C. § 2518(1)(b) (requiring the affiant to include "a full and complete statement of the facts and circumstances relied upon by the applicant").  Because affirmatively disclosing possible

exculpatory information does not run afoul of the Fourth Amendment and because the statements are not at all misleading, a *Franks* hearing to resolve IP session data is not warranted.

b.      **Business Record Subpoenas to Sellers or Issuers of Telephone Numbers**

McCurdy challenges the Affiant's statement about issuing grand jury subpoenas to custodians of record at businesses selling or issuing telephone numbers.  (Doc. 85 at 429.)  To make his point, McCurdy quotes a portion of the challenged paragraph and states that it is "unparticularized, inchoate, [and] general[.]"  (*Id.* at 430.)  Context is key.  The full paragraph stated:

> Finally, the service of grand jury subpoenas to apparent "custodians of records" for businesses associated with the sale or issuance of the telephone numbers described in this affidavit likely would not lead to the identification of the actual users of such telephones.  Based on Affiant's experience, Affiant knows that drug traffickers often obtain cellular telephones in fictitious names or the names of third parties, as appears to be the case in this investigation, or they obtain prepaid calling cards without any corresponding subscriber information in an effort to conceal their drug trafficking activities from law enforcement.  In addition, the use of such an approach could compromise the investigation insofar as individuals employed at such locations might notify members of drug trafficking network about law enforcement's interest in the telephone numbers.

(Doc. 85-5 at ¶ 117.)

Omitting the first sentence of this paragraph suggests the Affiant stated subpoenas simply could not be issued.  But when read in its entirety, the paragraph explained the limited use of such subpoenas in identifying target phone users (as opposed to target phone subscribers) and potential risks associated with issuing grand jury subpoenas to these businesses.  Other portions of the Affidavit reveal subpoenas were not categorically disregarded as a useful investigative step but were, in fact, issued.  (*Id.*; *see also* ¶¶ 119, 108, 120.)

Paragraph 117's reference to possible risks associated with issuing grand jury subpoenas to businesses selling or issuing telephone numbers is more opinion than an "inchoate" or

underdeveloped statement.  Opinions "cannot legitimately be characterized as false or misleading."  *United States v. Hodge*, No. 23-cr-195, 2024 WL 4919681, 2024 U.S. Dist. LEXIS 216860; at *59 (N.D. Ohio Nov. 29, 2024) (citing *United States v. Blakeney*, 191 F.3d 451 (6th Cir. 1999) (unpublished table decision)).

McCurdy's reliance on the Affidavit's disclosure that a grand jury subpoena was issued to LFA Tablet Press as a means to counter any suggestion business record subpoenas would be ineffective is also unavailing.  (Doc. 85 at 430.)  First, LFA Tablet Press is in the business of distributing pill presses and tablet powder (Doc. 85-5 at ¶ 119).  McCurdy's effort to paint this information as misleading is also undercut by the fact his offer of proof cites to the Affidavit itself.  Meaning, all of this information was available to and considered by the reviewing court. McCurdy has failed to show that Paragraph 117, standing alone or when read in context, was misleading.  Thus, a *Franks* hearing on this point is not warranted.

### c.  Cellular Phone Precise Location Data Tracking

Again, McCurdy's challenge hinges on selecting portions of the affidavit and claiming misrepresentations therein establish the need for a *Franks* hearing.  McCurdy directs the Court to the Affiant's statement "that the closest radius around [his] phone that data can get is 600 meters."  (Doc. 85 at 430 (citing Doc. 85-5 at ¶ 126).)  To support his argument this is misleading, McCurdy declares the Affiant revealed a "significantly closer radius – 364 meters." (Doc. 85 at 430 (citing Doc. 85-5 at ¶ 132).)  The affidavit stated:

> On April 1, 2022, the Honorable U.S. Magistrate Judge Thomas Parker, for the United States District Court in the Northern District of Ohio, signed a warrant authorizing the acquisition of precise location data for TT-1 (REGINALD MCCURDY's secondary phone).  Precise location data on this telephone would have been instrumental in confirming who is using which phones, but the closest data has been *anywhere within 600 meters*.

(Doc. 85-5 at ¶ 126 (emphasis added).)  In paragraph 132, the Affiant stated:

> At approximately 5:20 PM, Investigators observed the Jeep Wrangler back at 290 E. 255th St., Euclid, Ohio 44132.  At approximately 5:28 PM, investigators receive a Ping location on REGINALD MCCURDY's phone which indicated the phone was within a radius (364 meters) of the residence.

(*Id.* at ¶ 132.)  On its face, the affidavit does not appear inconsistent.  A ping at 364 meters is "within 600 meters."  If a more precise statement was "up to 600 meters," the Affiant's lack of precision, without more, does not warrant a *Franks* hearing.  *See Franks*, 438 U.S. at 171. Moreover, the information about which McCurdy complains was all provided to the authorizing judge.[2]  McCurdy fails to demonstrate the Affiant intended to deceive the court or that he entertained any serious doubt about the accuracy of these statements.

### d.  Ability to Bring Criminal Charges in 2019/2020.

McCurdy asserts one falsehood in the affidavit, that being the statement about criminal prosecutions during the pandemic.  (Doc. 85 at 431.)  Paragraph 148 provided:

> In this investigation, law enforcement has executed two search warrants on postal parcels.  During the collection of evidence from those parcel's tablets containing fentanyl were found and during the 2019 parcel search warrant ultimately REGINALD MCCURDY's prints were found on the surfaces of the parcel's contents.  At the time of the first seizure in 2019/2020 USPIS investigators were not able to have charges brought forth due to the pandemic.  Investigators learned of the connection to the parcel sent in January 2022 to ANGELINA VENTURA after the unsuccessful controlled delivery.  Timeliness is the main detriment to the investigative techniques used thus far, because much of this information is learned far after the investigative operations or something to that effect.

(Doc. 85-5 at ¶ 148.)

---

[2] McCurdy also contends the Affiant's acknowledgment of precise location information facilitating the identification of other telephone numbers runs counter to necessity because such information was not sought.  But as explained herein, investigators are not required to exhaust every possible investigative step.  What must be shown is their reasoned consideration and use of available investigative steps, when appropriate, so that applications for wiretaps are not "resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Alfano*, 838 F.2d at 163 (citation omitted).

To offer proof of falsity, McCurdy relies on LexisNexis CourtLink dockets revealing that from April 1, 2020, through December 31, 2020, 1,019 criminal matters were filed in the Northern District of Ohio.  (Doc. 85 at 431.)

In reviewing the Affiant's statement, the Court finds it is expressly limited to cases brought by postal inspectors.  He does not posit there was a District-wide hold on all criminal matters.  McCurdy's proffered case data reflects all criminal matters, regardless of investigating agency.  It is widely known that the United States Postal Inspection Service does not present all criminal matters for prosecution.  So, while there is an allegation of falsehood, and there is an offer of proof, the offer of proof is insufficient to make a preliminary showing that this statement was knowingly and intentionally false, or that it was made with reckless disregard for the truth. McCurdy has not demonstrated the Affiant's deliberate intent to deceive or that he entertained serious doubt as to the truth of his statement concerning postal service investigations.  *Franks*, 438 U.S. at 171.  McCurdy is not entitled to a *Franks* hearing on this point.

### 3.    Additional Challenges to Necessity

McCurdy challenges necessity in three additional ways: (a) during surveillance, three addresses were identified, but no follow-up occurred; (b) the Affiant's characterizations of the specified travel destinations as source locations without reference materials to support that opinion should have been disregarded; and (c) the identification of other targets, namely K.B. and Chinese nationals, should have been more thoroughly investigated.

Contrary to McCurdy's arguments, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted."  *Alfano*, 838 F.2d at 163.  The "mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need

for wiretap surveillance." *Stewart*, 306 F.3d at 305.  And statements premised on an investigator's training and experience, including source cities for illegal narcotics, may be considered.  *See United States v. Frazier*, 423 F.3d 526, 536-37 (6th Cir. 2005).

The Court has reviewed the application and accompanying affidavit in full and finds a "'full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous'" was provided to District Judge Boyko.  *See Stewart*, 306 F.3d at 304 (quoting 18 U.S.C. § 2518(1)(c)); *see also* Doc. 96-5 at 618-98 and Doc. 96-6 at 699-711.  McCurdy has not presented this Court with a meritorious basis to declare the Order authorizing the interceptions of wire and electronic communications unlawful.

## III.   CONCLUSION

For the reasons state above, McCurdy's Motion to Suppress is DENIED, and there is no basis on which to proceed to an evidentiary hearing pursuant to *Florida v. Harris*, 568 U.S. 237, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) or *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).


**IT IS SO ORDERED.**


Date:  April 17, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE