UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24-cr-00184 |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| REGINALD MCCURDY, *et al.*, | ) | **OPINION AND ORDER** |
| Defendants. | ) | |

Ahead of her trial, Defendant Angelina Ventura[1] moves to exclude the expert testimony of Officer Jesse Bynum regarding a package, allegedly containing fentanyl pills, that was mailed to her home in January 2022. (Doc. 271, at 2349.)[2] Ventura also moves to exclude all evidence about the Narcotics Identification Kit ("NIK") field test performed on the pills in that package. (*Id.*) In opposition, the government represents that it does not intend to offer any scientific opinions from Officer Bynum and will only elicit opinions based on his training and experience with narcotics investigations. (Doc. 279, at 2562-63.) The government further represents that it will elicit testimony about the NIK field test only to explain why law enforcement took subsequent investigative steps. (*Id.* at 2565-66.) Based on these representations, the Court is

---

[1] Ventura's co-defendant, Reginald McCurdy, filed a belated motion to join Ventura's motion to exclude. (Doc. 285.) McCurdy's motion to join is untimely, but the Court nonetheless GRANTS it because McCurdy's joinder does not inject any new arguments or delay into the proceedings. So, although the remainder of this Order refers only to Ventura, the analysis and outcome apply equally to McCurdy.

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

satisfied that the anticipated testimony will not run afoul of the rules governing expert testimony, and no hearing is necessary. Ventura's motion is therefore DENIED.

## I. BACKGROUND

This case began when a federal grand jury indicted Ventura on three drug-related charges. (Doc. 1, at ¶¶ 1, 63, 65.)[3] The indictment alleged, among other conduct, that Ventura received packages containing fentanyl on behalf of her co-defendant. (*Id.* ¶¶ 2(C), 28-29, 40-41, 47-50, 53, 55.) Ventura's motion to exclude focuses on a package she purportedly received in January 2022. (*See* Doc. 271, at 2350.)

In broad strokes, the parties appear to agree on the events surrounding this package.[4] On January 10, 2022, United States Postal Inspector Albert Cranor intercepted and searched a package sent to Ventura's residence after officers obtained a search warrant. (Doc. 271, at 2350; Doc. 279, at 2561.) He discovered a mason jar filled with about 2,000 blue pills all marked with "M<>30." (Doc. 271, at 2350; Doc. 279, at 2561-62.) Inspector Cranor then conducted an NIK field test on one pill, which returned a presumptive positive indication for fentanyl, prompting him to seize all the pills. (Doc. 271, at 2350; Doc. 279, at 2562.)

Beyond those events, however, there are several unknowns. Officers apparently did not document the type of NIK test used, nor did they maintain records about the calibration of the scale used to conduct that test. (Doc. 271-1, at 2364.) And while Inspector Cranor was able to perform an NIK test on one pill, the remainder of the pills were destroyed before they could be sent to a forensic laboratory for confirmatory testing. (Doc. 271, at 2350; Doc. 271-1, at 2364;

---

[3] There is an error in the indictment that has caused the duplication of paragraph numbers from 61 through 67. Here, paragraph 63 refers to Count 4 (PageID 17), and paragraph 65 refers to Count 10 (PageID 18).

[4] Because the parties largely did not submit as exhibits much of the discovery relevant to the January 2022 package, the Court at times relies on the parties' descriptions of the discovery.

Doc. 279, at 2562.) As a result, the only confirmation in the record comes from testing of the mason jar that had held the pills because a laboratory was able to collect residue from the jar and confirm that the residue contained fentanyl. (Doc. 279, at 2562.)

Ventura now moves to limit the testimony that can be offered about the pills seized from the January 2022 package. (Doc. 271.)

## II. ANALYSIS

When a party challenges the admissibility of proposed expert testimony, courts must act as a "gatekeepers" to determine whether the proposed testimony satisfies Federal Rule of Evidence 702. *United States v. Mallory*, 902 F.3d 584, 592 (6th Cir. 2018) (alteration accepted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). Expert testimony is admissible only if its proponent shows by a preponderance of the evidence that (1) the testimony is being offered by a witness qualified with sufficient "knowledge, skill, experience, training, or education," and (2) the testimony satisfies four criteria. Fed. R. Evid. 702; *see also Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1223-24 (6th Cir. 2025). Those four criteria are: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

### A. Officer Bynum's Testimony

Ventura's challenge to Officer Bynum's testimony centers on his lack of qualifications. She argues that Officer Bynum has no training or experience in chemistry or forensic science, so

he is not qualified to opine that the pills found in the January 2022 package contained fentanyl.[5] (Doc. 271, at 2354.) The government does not contest Ventura's point that Officer Bynum lacks scientific training or experience. Instead, it represents that Officer Bynum will not offer any scientific testimony. According to the government, Officer Bynum will testify only that, based on his training and professional experience, the pills from the January 2022 package were "consistent in appearance" with confirmed fentanyl pills seized in both this and other cases. (Doc. 279, at 2562-63.)

Officer Bynum's proposed testimony about the appearance of the pills seized in January 2022, and how that appearance compares to pills seized on other occasions, is prototypical lay evidence not governed by Rule 702. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 241 (6th Cir. 2010) ("The prototypical example of [lay evidence] relates to the appearance of persons or things . . . ." (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995))). Any person can observe and describe the appearance of a pill—in this case, round, blue, and scored with "M<>30" (Doc. 279, at 2562)—without specialized knowledge or training. That person likewise does not need any specialized knowledge to conclude that one round, blue pill looks like another round, blue pill.

That said, even if Officer Bynum can freely offer lay testimony about the pills' appearances, the question remains whether he can extrapolate from appearance to opine that the pills seized in January 2022 in fact contain fentanyl. Ventura asserts that Officer Bynum cannot, but she does not explain why drawing inferences from appearance is beyond Officer Bynum's

---

[5] Ventura also briefly argues that Officer Bynum has failed to reliably apply the experience he does have (his experience with narcotics investigations) because he failed to connect that experience to his opinion that the seized pills contained fentanyl. (Doc. 271, at 2356-57.) As the Court will explain shortly, that opinion flows from a simple inference about how the seized pills are similar in appearance to confirmed fentanyl pills. This inference reliably connects Officer Bynum's experience with his opinion for purposes of admissibility under Rule 702.

knowledge. (Doc. 281, at 2575-78.) Officer Bynum's curriculum vitae reflects extensive experience with drug investigations (*see* Doc. 195-1), and the Sixth Circuit has repeatedly held that such experience can qualify officers as experts. *United States v. Maya*, 966 F.3d 493, 505 (6th Cir. 2020) (collecting cases). At the very least, this experience qualifies Officer Bynum to draw the straightforward inference that the seized pills probably contain fentanyl because they look like the fentanyl pills with which he is familiar.[6]

Ventura may of course challenge the merits of that inference, but "challenges to the merits of [expert] opinions . . . go to weight rather than admissibility." *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 588 (E.D. Mich. 2022); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (holding that the courts' role is to gatekeep Rule 702's requirements, not "the correctness or truthfulness" of a challenged expert opinion).

**B. NIK Field Test**

Ventura separately challenges the admissibility of NIK field testing conducted on the pills seized in January 2022. In her view, the field testing is too unreliable to be introduced at trial in any capacity. (Doc. 271, at 2360-62.) As it did when addressing Ventura's challenge regarding Officer Bynum, the government responds by proposing to limit the purposes for which it will introduce evidence about the field testing. It represents that Inspector Cranor will testify only that he has significant experience with NIK field tests and their procedures after performing several tests throughout his investigative career; that he performed such a test on the pills seized in January 2022; that the test returned a positive indication for fentanyl; and that this prompted Inspector Cranor to seize the pills and further investigate. (Doc. 279, at 2565-66.)

There is no evidentiary problem if the government limits testimony about the NIK field

[6] The Court has its doubts that this is an expert opinion at all, as opposed to a lay opinion. But since the parties have not discussed Rule 701 governing lay opinions, neither does the Court.

test as described. Limited that way, the NIK field test will not be used to establish the chemical composition of the seized pills. Rather, the field test will be referenced only for a narrative purpose: explaining what prompted law enforcement to seize the January 2022 pills and to take additional investigative steps. It does not call for expert testimony to introduce the field test evidence in this manner—explaining that law enforcement took certain actions because they suspected fentanyl does not require scientific or specialized knowledge. *See* Fed. R. Evid. 702.

To be sure, the line between this permissible narrative purpose and potentially impermissible expert testimony may be thin. It would be difficult for Inspector Cranor to explain why he seized the pills and conducted further investigation without alluding to the fact that a positive NIK field test indicates fentanyl may be present. But as long as government witnesses avoid suggesting that the field test scientifically or definitively confirms the presence of fentanyl, saying only that a positive field test indicates a possibility fentanyl is present, they will stay on the permissible side of the line. If any witness crosses this line at trial, Ventura may renew her objection then. As it stands now, though, Rule 702 does not require the Court to exclude all mention of the NIK field test.

## III. CONCLUSION

As explained herein, the motion is DENIED.

**IT IS SO ORDERED.**

Date: August 19, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE